**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
LI ZHEN ZHU,
*on behalf of herself and others similarly situated,*
                                        Plaintiff,


                         v.


WANRONG TRADING CORP.,                        Case No. 18-cv-00417 (ILG)
TAI HE TRADING CORP.,                         (MMH)
YI ANG SHAO,
XIANG QI CHEN,
MING REN XU, and
TAO TAO REN,

                                        Defendants.
-----------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF CLASS'S MOTION FOR AN
ORDER GRANTING FINAL APPROVAL TO PROPOSED CLASS ACTION
<u>SETTLEMENT</u>**

TROY LAW, PLLC
Aaron B. Schweitzer
John Troy
Tiffany Troy
41-25 Kissena Boulevard, Suite 110
Flushing, NY 11355
(718) 762-1324
troylaw@troypllc.com
*Class Counsel*

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................... ii

**PRELIMINARY STATEMENT** ............................................................ 1

**FACTUAL AND PROCEDURAL BACKGROUND** ............................. 1

   **I.**   **PROCEDURAL HISTORY** ........................................................ 1

   **II.**  **OVERVIEW OF INVESTIGATION AND DISCOVERY** ............. 2

   **III.** **SETTLEMENT NEGOTIATIONS** ......................................... 3

**SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION** ...... 3

   **I.**   **THE SETTLEMENT FUND** ...................................................... 3

   **II.**  **RELEASE** .............................................................................. 4

   **III.** **CLASS** .................................................................................. 4

   **IV.** **NOTICE** ............................................................................... 4

   **V.**  **ALLOCATION** ....................................................................... 5

   **VI.** **ATTORNEYS' FEES AND LITIGATION COSTS** .................... 6

   **VII.** **SERVICE AWARDS** ............................................................. 6

   **VIII.** ........................................................................ **ADMINISTRATION FEES** 7

**ARGUMENT** ....................................................................................... 7

   **I.**   **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS** ............. 7

      **A.** **THE PROPOSED SETTLEMENT IS SUBSTANTIVELY FAIR** ......... 8

      **B.** **THE PROPOSED SETTLEMENT IS PROCEDURALLY FAIR** ......... 14

**CONCLUSION** .................................................................................... 17

i

# **TABLE OF AUTHORITIES**

## Cases

*Azogue v. 16 for 8 Hosp. LLC*, No. 13-cv-07899 (TPG), 2016 U.S. Dist. LEXIS 111134 (S.D.N.Y. Aug. 19, 2016) ........................................................................... 6

*Beckman v. Greentree Sec., Inc.*, 87 N.Y. 2d 566, 570 (1996)....................................... 16

*Beckman v. KeyBank*, 293 F.R.D. 467 (S.D.N.Y. 2013) ......................................... 10, 12

*Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969)....................................................... 16

*Cagan v. Anchor Sav. Bank FSB*, No. 88-cv-03024, 1990 WL 73423 (E.D.N.Y. May 22, 1990)13

*Carillo v. 27-39 East 30 Rest Corp.*, No. 13-cv-04491 (S.D.N.Y. Feb. 2, 2015)........................ 15

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)....................................... 8

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ............................................. 8

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) ................................... 11

*Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-cv-03452, 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)........................................................................................... 13

*Hadel v. Gaucho, LLC*, 193 F. Supp. 3d 243 (S.D.N.Y. 2016) ...................................... 6

*Henry v. Little Mint, Inc.*, No. 12-cv-03996 (CM), 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014)........................................................................... 9, 11

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ...................................... 9, 10, 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007)......................................................................... 14

*In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124 (2008) ............................ 15

*In re Prudential Secs., Inc.*, 164 F.R.D. 362 (S.D.N.Y. 1996) ...................................... 16

*Joel A. v. Giuliani*, 218 F.3d 132 (2d Cir. 2000) .................................................... 14

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................... 9

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ......................... 13

*Raniere v. Citigroup, Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) .................................... 6, 13

*Reyes v. Altamarea Grp., LLC*, No. 10-cv-06451 (RLE), 2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) ......................................................................... 7

*RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94-cv-05587, 2003 WL 21136726 (S.D.N.Y. May 15, 2003) ......................................................................... 10

*Spann v. AOL Time Warner, Inc.*, No. 02-cv-08238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ........................................................................................... 8

*Surdu v. Madison Global, LLC*, No. 15-cv-06567 (HBP), 2017 U.S. Dist. LEXIS 142175 (S.D.N.Y. Sep. 1, 2017) ......................................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) ........................ passim

*Weigner v. City of New York*, 852 F.2d 646 (2d Cir. 1988)........................................... 16

*Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-03693 (PGG), 2013 U.S. Dist. LEXIS 144327 (S.D.N.Y. Oct. 2, 2013)........................................................................... 6

## Rules

Fed. R. Civ. P. 23(e)(2) ........................................................................... 7, 16

## PRELIMINARY STATEMENT

The parties jointly submit this Memorandum of Law in support of the Joint Motion for Final Approval of the Class Action Settlement ("Joint Motion for Final Approval"). For purposes of settlement only, Defendants do not oppose this motion. Other than for settlement purposes, Defendants do not concede in any way that class or collective action certification is appropriate in this case. The parties' Two Hundred Eighty Thousand Dollars ($280,000.00) settlement of this wage and hour class and collective action satisfies all of the criteria for final approval. Plaintiff Class seeks an order: (1) approving as fair and adequate the class-wide settlement of this action, as set forth in the Settlement Agreement and Release ("Settlement Agreement")

On August 24, 2023, the Court took the first step in the settlement approval process by granting preliminary approval and directing that notice be mailed to class members. *See* Docket No. 125. The members of the class had at the time of class certification been notified of their right to opt out of the class, and the members of the class were notified following preliminary approval of the settlement of their right to object to the settlement. For the reasons stated below, the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  PROCEDURAL HISTORY

On March 11, 2018, Plaintiff LI ZHEN ZHU, on behalf of herself and other similarly situated, brought an action alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Troy Dec. ¶ 34. The Complaint alleges that Defendants willfully failed, *inter alia*, (i) to pay Plaintiffs and similarly situated employees for all regular and overtime hours worked; (ii) to pay minimum wage and overtime due to their piece-work payment scheme; (iii) to pay spread of hours payments when required; and (iv) to issue proper rate of pay notices and wage statements. Plaintiff Li Zhen Zhu sought to recover, *inter alia*, unpaid wages, liquidated

1

damages, penalties, injunctive relief, and attorneys' fees and costs. Defendants have disputed, and continue to dispute, Plaintiffs' allegations in this lawsuit, and Defendants deny any liability for any of the claims that have or could have been alleged by Plaintiffs. *Id.* ¶ 35. Plaintiff sought to recover, on behalf of herself and others she claimed were similarly situated, unpaid minimum wages, overtime premium, liquidated damages and penalties, injunctive relief and attorneys' fees and costs. *Id.* ¶ 36. An opt-in collective pursuant to 29 U.S.C. § 216(b) was conditionally certified on September 25, 2018. *Id.* ¶ 37. Opt-In Plaintiffs FAUSTO ASTUDILLO ORTEGA and TOMAS DIAZ CRUZ have consented to join the Litigation pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). *Id.* ¶ 38.

## II.  OVERVIEW OF INVESTIGATION AND DISCOVERY

Before filing the Complaint, Plaintiff's Counsels at Troy Law, PLLC, conducted a thorough investigation. *Id.* ¶ 39. This included investigation and legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages, the proper measure of damages, and the likelihood of class certification. *Id.* ¶ 40. Troy Law had in-depth interviews with the named Plaintiff to help evaluate the risks of the case. *Id.* ¶ 41. Discovery in this case has consisted of reviewing and analyzing over a thousand pages of documentation electronically produced by Defendants, including the employment data of eleven (11) reasonably representative Class Members (including Plaintiffs), time records, payroll summaries, wage notices, and paystubs for Plaintiffs and Class Members. The documents were analyzed to calculate the damages owed to the Plaintiffs and Class Members. *Id.* ¶ 42.

Plaintiffs contend that the documents reflect that the Defendants' piece-rate payments from time to time amounted to less than the minimum wage, overtime pay, and spread of time pay that would have been owing to them and to Class members, and that Defendants did not furnish their employees with written wage notices and accurate wage statements as required by the NYLL. *Id.*

2

¶ 43. Plaintiffs' counsel used the data provided by Defendants, and Plaintiffs' recollections of their employment, to inform their calculations of damages for back wages, liquidated damages, and statutory penalties owed to Plaintiffs and the Class; and assessed the merits of Plaintiffs' claims and potential damages. *Id.* ¶ 44. Plaintiff's Counsel has provided a benefit to the Class and the judicial system by agreeing to cooperate in the prosecution and settlement of this case. *Id.* ¶ 45.

### III. SETTLEMENT NEGOTIATIONS

The parties engaged in a lengthy and exhaustive settlement process, beginning in about October 2019 to discuss settlement on a class basis (*see* Dkt. No. 60), Defendants gathering and disclosing representative class member information by June 23, 2020 (*see* Dkt. No. 80 – some delay occasioned by COVID-19 pandemic), and the parties exchanging demands and counteroffers between about October 2020 and December 28, 2021, when the parties reached agreement in principle on a settlement amount, and reporting their progress from time to time to the Court (*see* Dkt. Nos. 83, 85, 86, 87, 91, 93, 95, 97, 99, 101, 103). *Id.* ¶ 46. The parties continued to negotiate over the precise wording of the settlement agreement between December 29, 2021 and July 27, 2022 (*see* Dkt. No. 112), and executed the agreement by August 9, 2022. *Id.* ¶ 47.

If the parties had not been able to settle amicably, the parties would have proceeded to trial at significant cost to the parties. Because of the uncertainty of Plaintiffs' legal position and the uncertainty of maintaining class certification through trial, the Parties agreed to the settlement of Two Hundred Eighty Thousand Dollars ($280,000). Class Counsel then prepared and submitted a preliminary approval motion which was approved by the Court on August 24, 2023. *See* Docket Entry No. 125.

### SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

### I. THE SETTLEMENT FUND

The Parties agreed to settle the lawsuit for a total settlement amount of $280,000.00 (the "Settlement Fund"). The Settlement Fund covers Class Members' awards, service payments, attorneys' fees and costs, and costs of settlement administration not to exceed $16,000.00. The "Net Settlement Fund" is the Settlement Fund minus the reasonable costs of settlement administration, the amount of attorneys' fees and reimbursement for costs approved by the Court, and the amount of the service payment approved by the Court.

## II.    RELEASE

The Settlement Agreement provides that the Plaintiffs and each Class Member (as defined below) will release Defendants from all wage and hour claims that have been brought, or could have been brought, under the NYLL or the Wage Order, other than claims for retaliation (except that except that Named Plaintiff and Opt-In Plaintiffs release any claims for retaliation under the NYLL). Each Class Member who endorses their settlement check will further release Defendants from any and all claims for any wage and hour violations (other than claims for retaliation (except that Named Plaintiff and Opt-In Plaintiffs release any claims for retaliation under the FLSA)) that may have occurred from or relating to their employment with Defendants under the FLSA.

## III.    CLASS

The "Class Members" are defined as: Plaintiffs and all other current and former employees not exempt from receiving overtime, who worked for Defendants at the Plants [*i.e.*, the following meatpacking plants and allied facilities in New York City operated by Defendants at: 32-33 Hunters Point Avenue, Long Island City, NY 11101; 32-35 Hunters Point Avenue, Long Island City, NY 11101; and 48-43 32nd Place, Long Island City, NY 11101] at any time from March 11, 2012 through March 11, 2022, and who do not opt out of the Litigation as explained below, amounting to approximately 240 Class Members.

## IV.    NOTICE

4

The Settlement Agreement provides that, within thirty (30) days of entry of this Court's Order granting preliminary approval, notice will be mailed to the last known home address of each Class Member (which information will be provided by Defendants). The Claims Administrator will take reasonable steps to obtain the correct address of any Class Member whose notice is returned as undeliverable and will attempt to re-mail notices to those Class Members for whom notices are returned as undeliverable.

The Proposed Notice also contains information about how Class Members can exclude themselves from the Class or object to the settlement. Class Members will have sixty (60) days from the date of initial mailing to respond.

Every Class Member will thus receive a settlement check after final approval of the settlement. Each settlement check will contain the following affirmation:

> RELEASE OF CLAIMS: By endorsing this check, I consent to join the case entitled *Zhu v. Wanrong Trading Corp.*, No. 18-cv-00417 (ILG) (MMH), (E.D.N.Y.), and I hereby release Defendants from all wage and hour claims under the Fair Labor Standards Act, the New York Labor Law, and/or any other applicable wage-and-hour law, rule, or regulation brought or which could have been brought in the litigation, including, but not limited to, minimum wage and overtime claims.

Class Members that deposit, endorse, or cash their Settlement Checks will be bound by the release of their FLSA claims.

## V.    ALLOCATION

Every Class Member will receive a settlement check containing his or her settlement payment. The Claims Administrator will determine the settlement payments to each Class Member using data provided by Defendants.

According to the formula decided in the Settlement Agreement, each Qualified Class Member will receive a payment that is proportional to the duration of his or her employment during the Class Period, calculated on weeks worked within the class period.

The funds remaining from any uncashed checks after the check expiration period shall be returned to Defendants.

## VI.    ATTORNEYS' FEES AND LITIGATION COSTS

Consistent with the Settlement Agreement, Plaintiffs' Counsel will apply for reimbursement from the Settlement Fund for their litigation costs, and for attorneys' fees equal to one third of the Settlement Fund (less their litigation costs). Attorneys' fees in this range are commonly awarded in wage and hour class and collective litigations of this type. *See*, *e.g.*, *Azogue v. 16 for 8 Hosp. LLC*, No. 13-cv-07899 (TPG), 2016 U.S. Dist. LEXIS 111134, at *17 (S.D.N.Y. Aug. 19, 2016) ("Class Counsel's request for one third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit.'") (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12-cv-03693 (PGG), 2013 U.S. Dist. LEXIS 144327, at *26 (S.D.N.Y. Oct. 2, 2013)).

The Proposed Notice will explain Plaintiffs' Counsel's request to Class Members. The Court need not rule on fees and costs now. Pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, Plaintiffs' Counsel will subsequently file a formal motion for approval of attorneys' fees and reimbursement of expenses, which motion Defendants will not oppose provided it does not increase the Settlement Fund.

## VII.    SERVICE AWARDS

In recognition of the services they rendered on behalf of the Class, Named Plaintiff Li Zhen Zhu will apply for a service award of up to $20,000.00 and opt-in Plaintiffs Fausto Astudillo Ortega and Tomas Diaz Cruz will apply for service awards of up to $10,000.00 each. This is in line with typical service awards in this Circuit. *See*, *e.g.*, *Hadel v. Gaucho, LLC*, 193 F. Supp. 3d 243, 244 (S.D.N.Y. 2016) (approving service awards of $15,000.00 to two named plaintiffs and $10,000.00 to two others in FLSA action); *Raniere v. Citigroup, Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving settlement service awards of $20,000.00, $15,000.00, and $7,500.00 for named

plaintiffs in FLSA and NYLL action); *Reyes v. Altamarea Grp., LLC*, No. 10-cv-06451 (RLE), 2011 U.S. Dist. LEXIS 115984, at *24 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000.00 to three class representatives in restaurant case challenging tip and minimum wage policies).

These Plaintiffs have served the Class well by assisting with the preparation of the pleadings, the factual investigation of the claims, in discovery, in mediation, and in preparation for trial. The Proposed Notice will explain Plaintiffs' request for service awards. Plaintiffs will move for Court approval of the service awards simultaneously with their motion for final approval of the settlement. Defendants do not contest the Service Awards provided they do not increase the Settlement Fund.

## VIII.   ADMINISTRATION FEES

Class Counsel will retain Simpluris as administrator to mail the settlement notice to Class Members, receive and process exclusion requests and objections, calculate each Class Member's individual settlement award and tax withholdings, pay out the Settlement Fund, provide weekly reports detailing the results of the class mailings and participation, and answer Class Member inquiries. The Claims Administrator will be required to agree to a reasonable cap for Claims Administration fees and expenses, which the Parties estimate to be no more than $16,000.00.

## ARGUMENT

## I.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(2). Judicial determination of procedural fairness involves examination of the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato*

*v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted); *see also Spann v. AOL Time Warner, Inc.*, No. 02-cv-08238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions"). When, as here, a settlement is negotiated subsequently to class certification, it is subject to a lower degree of scrutiny in assessing its fairness than when a settlement is negotiated prior to class certification. *See D'Amato*, 236 F.3d at 85; *Spann*, 2005 WL 1330937, at *5. Procedural and substantive considerations support approving the proposed settlement.[1]

### a. THE PROPOSED SETTLEMENT IS SUBSTANTIVELY FAIR

In *Grinnell Corp.*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). The *Grinnell* factors guide district courts in making this determination. They are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* . All of the *Grinnell* factors weigh in favor of final approval of the Settlement Agreement.

---

[1] Defendants deny Plaintiffs' and the Class's allegations and assert that they complied with all applicable laws and regulations at all times.

### i. Litigation through Trial Would Be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a favorable settlement prior to trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and [the] multitude of other problems associated with them." *Surdu v. Madison Global, LLC*, No. 15-cv-06567 (HBP), 2017 U.S. Dist. LEXIS 142175, at *25–26 (S.D.N.Y. Sep. 1, 2017) (quoting *Henry v. Little Mint, Inc.*, No. 12-cv-03996 (CM), 2014 U.S. Dist. LEXIS 72574, at *18 (S.D.N.Y. May 23, 2014) (itself quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub. nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001)). This case is no exception, with 261 class members, with there having been significant legal disputes over the propriety of class/collective action certification, and with there being significant factual and legal disputes as to the merits.

Although the Parties have already undertaken considerable time and expense litigating this matter, further litigation without settlement would necessarily result in additional expense and delay via a complicated trial. Preparing and putting on evidence on the complex factual and legal issues at such a trial would consume vast amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the dispute. Any judgment would likely be appealed, thereby extending the duration of the litigation. The settlement, on the other hand, makes monetary relief available to class members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of final approval.

### ii. The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighted in considering its adequacy. *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002). The lack of class member objections "may itself be

taken as evincing the fairness of a settlement." *RMED Int'l, Inc. v. Sloan's Supermkts., Inc.*, No. 94-cv-05587, 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003). Here, an experienced third-party administration company, Simpluris, mailed the Court-approved notices ("Notices") of the class and collective action and settlement to all the class members for whom the parties had provided addresses, and attempted to located an address or phone number of the remaining class members whose addresses had not been kept in Defendants' records. The Notices explicitly informed class members of their rights and the procedures to participate in the settlement. After receipt of this Notice, no class members requested exclusion from the settlement. *See* Butler Affidavit ¶ 11. No class members have objected to the settlement. *See id.* ¶ 12. This factor thus weighs heavily in favor of final approval.

### iii. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Beckman v. KeyBank*, 293 F.R.D. 467, 475 (S.D.N.Y. 2013) (quoting *Warfarin*, 391 F.3d at 537). The pretrial negotiations and discovery must be sufficiently adversarial that they are "not designed to justify a settlement, [but rather represent] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian,* 80 F. Supp. 2d at 176 (internal citations omitted).

The Parties' discovery here meets this standard. Plaintiffs' counsel conducted in-depth interviews with named Plaintiff, obtained and reviewed data from Defendants with respect to all class members after some contested litigation over the scope of the pre-class certification discovery, including payroll records of a representative sample of eleven (11) class members each of whom was employed between 0.6 and 4.5 years (on average 2.4 years) between 2014 and 2019 to calculate the damages owed to class members.

The parties engaged in a lengthy and exhaustive settlement process, beginning in about October 2019 to discuss settlement on a class basis (*see* Dkt. No. 60), Defendants gathering and disclosing representative class member information by June 23, 2020 (*see* Dkt. No. 80 – some delay occasioned by COVID-19 pandemic), and the parties exchanging demands and counteroffers between about October 2020 and December 28, 2021, when the parties reached agreement in principle on a settlement amount, and reporting their progress from time to time to the Court (*see* Dkt. Nos. 83, 85, 86, 87, 91, 93, 95, 97, 99, 101, 103). *Id.* ¶ 46. The parties continued to negotiate over the precise wording of the settlement agreement between December 29, 2021 and July 27, 2022 (*see* Dkt. No. 112), and executed the agreement by August 9, 2022. *Id.* ¶ 47. Based on the circumstances, the parties were well-equipped to evaluate the strengths and weaknesses of the case. *See*, *e.g. Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005) (approving settlement where parties had exchanged extensive information pertaining to the identities of the class members and to defendant's time and pay practices and where counsels' negotiations, while "cooperative," had "been in no way collusive."). Therefore, this factor favors final approval.

### iv.  Plaintiff Would Face Real Risks If the Case Proceeded (*Grinnell* Factors 4 and 5)

In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Henry*, 2014 U.S. Dist. LEXIS 72574, at *22 (quoting *In re Austrian*, 80 F. Supp. 2d at 177). Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. A trial would involve significant risks to Plaintiffs because of the fact-intensive nature of proving liability under the FLSA and the NYLL, and in light of Defendants' available defenses.

Plaintiffs contend that the Defendants (i) to pay Plaintiffs and similarly situated employees for all regular and overtime hours worked; (ii) to pay minimum wage and overtime due to their

piece-work payment scheme; (iii) to pay spread of hours payments when required; and (iv) to issue proper rate of pay notices and wage statements. While Plaintiffs believe that they could ultimately establish Defendants' liability, to do so would require significant factual development. Plaintiffs' counsels are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain. The proposed settlement of Two Hundred Eighty Thousand Dollars ($280,000.00) alleviates these uncertainties and provides a reasonable and fair recovery to Plaintiffs and the Class. This factor therefore weighs heavily in favor of final approval.

### v.  Maintaining a Class through Trial Would Not Be Simple (*Grinnell* Factor 6)

If the litigation continues, there is significant risk that the Court will decertify the Class before the end of trial, either of its own motion or on the motion of Defendants' experienced and skilled counsel. Settlement eliminates the risk, expense, and delay associated with maintaining certification. This factor favors preliminary approval.

### vi. Defendants' Ability to Withstand a Greater Judgment Is Not Clear (*Grinnell* Factor 7)

It is unclear if Defendants would be able to withstand a greater judgment than that which would result from the Two Hundred Eighty Thousand Dollars ($280,000.00) settlement. However, even if Defendants were able to withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Beckman*, 293 F.R.D. at 476 (internal quotation marks omitted). Here, the Settlement Agreement provides Class Members with reasonable and more prompt relief than they would receive at the conclusion of the litigation, potentially several years from now taking into account the possibility of appeal, and in which relief is not guaranteed due to the risks involved in proving liability and damages. Therefore, Defendants' inability to withstand a greater judgment weighs in favor of the fairness of the Settlement.

### vii. The Settlement Fund Is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Raniere*, 310 F.R.D. at 219 (internal quotation marks omitted); *see also Grinnell Corp.*, 495 F.2d at 455, n.2 ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair."); *Cagan v. Anchor Sav. Bank FSB*, No. 88-cv-03024, 1990 WL 73423, at *12 – 13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Raniere*, 310 F.R.D. at 219 (quoting *Wal-Mart Stores*, 396 F.3d at 119). Moreover, when settlement assures immediate payment of substantial sums to class members, "even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road,'" settlement is reasonable under this factor. *See Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-cv-03452, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008). Defendants have agreed to settle this case for Two Hundred Eighty Thousand Dollars ($280,000.00) settlement, which represents a significant recovery compared to the damages calculations performed by Plaintiff's counsel to assess the maximum possible recovery should Plaintiffs prevail at a trial, is a fair and reasonable recovery amount in light of Defendants' available defenses should litigation proceed." *See* Troy Dec. ¶ 53.

Upon the Court's approval, each Qualified Class Member will receive a payment that is proportional to the duration of his or her employment during the class period. Thus, for instance, a Class Member who worked for two years will receive a considerably larger share than a Class Member who worked for six months. Based on estimates provided by the Administrator, the highest individual allocation amount, following deductions of expected expenses, attorneys' fees, administrator's fees, and service awards from the Settlement Fund, is estimated to be One Thousand Six Hundred Twenty Two Dollars ($1,622.61) and the average settlement payment is estimated to be Five Hundred Twenty Three Dollars and Eighty Five Cents ($523.85). *See id.* ¶ 58. Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable.

Thus, the *Grinnell* factors all weigh in favor of granting preliminary approval of the settlement at this early stage. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Romero*, 58 F. Supp. 3d at 420 (quoting *Joel A. v. Giuliani,* 218 F.3d 132, 138–39 (2d Cir. 2000)), the Court should grant preliminary approval.

**b.  THE PROPOSED SETTLEMENT IS PROCEDURALLY FAIR**

**i.   The Settlement Was the Result of Arm's Length Negotiation**

The proposed settlement is procedurally fair because it was reached through arm's length negotiations, and after experienced counsel had evaluated the merits of Plaintiffs' claims. *See Wal-Mart Stores*, 396 F.3d at 116 (A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement. *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

14

Here, the settlement was reached after Plaintiff conducted a thorough investigation and evaluation of the claims, and after extensive negotiations between the parties. Class Counsel spent significant effort and time between October 2019 and July 27, 2022 to achieve the Two Hundred Eighty Thousand Dollars ($280,000.00) settlement. *See* Troy Dec. ¶¶ 46-47. From the outset, Class Counsel thoroughly investigated the claims and defenses, focusing on the underlying merits of the class members' claims, the damages to which they were entitled, and obtained class certification. Through discovery, Class Counsel obtained, reviewed, and analyzed hundreds of pages of employment records, including payroll records and time records for Plaintiffs and class members. This comprehensive discovery enabled Class Counsel to perform class-wide damage calculations.

At all times during the settlement process, the parties negotiated on an arm's-length basis. These arm's-length negotiations involved counsel well-versed in wage and hour law, raising a presumption that the settlement achieved meets the requirements of due process. *See Wal-Mart Stores*, 396 F.3d at 116.

### ii.  The Distribution of Class Notice Satisfied Due Process

As two hundred fifty (250) of the fifty five (261) Class Members (one hundred precent (95.79%; *see* Butler Decl. ¶¶ 5–9) received the class settlement notice by mail, we believe that such result is adequate and satisfies due process. Moreover, similar deliverable rates have been approved in other class action settlements. *See*, *e.g.*, *Carillo v. 27-39 East 30 Rest Corp.*, No. 13-cv-04491 (S.D.N.Y. Feb. 2, 2015) (deliverable rate of 60% approved for final class fairness in restaurant case where many employees were transient and undocumented). While there are no rigid rules to determine the adequacy of notice in a class action, the standard is generally that of reasonableness. *See In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124 (2008) (citing *Wal-Mart*, 396 F.3d at 113–14). Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual

notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members. *See* Fed. R. Civ. P. 23(c)(2); *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988); *In re Prudential Secs., Inc.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996). "Practicable" implies flexibility, with the type of notice depending upon the particular circumstances of each case. *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969). Where members of the class are readily identifiable and personal notice would not be so prohibitively expensive as to prevent the class action from being prosecuted, individual notices by first-class mail (as was done in the instant case), would in most cases be the "best notice practicable." *Id.* Courts have consistently concluded that parties' diligent effort to mail individual notices to all reasonably identifiable class members, the mailing of additional notice materials indirectly through interested their parties, and the provision of publication notice all meet the requirements of due process. *See Beckman v. Greentree Sec., Inc.*, 87 N.Y. 2d 566, 570–71 (1996) (mailing notice fulfilled due process—actual notice unnecessary).

As detailed in the Administrator's Declaration, Defendants provided a class list of two hundred sixty one (261) Class Members to Simpluris on September 8, 2023. *See* Butler Affidavit ¶ 5. On September 22, 2023, after updating the mailing addresses through the NCOA, Notice Packets were mailed in English, Spanish, and Chinese via First Class Mail to 261 Class Members contained in the Class List. *See id.* ¶ 6-8. Twenty four (24) mailed notices were returned as undeliverable. Thirteen (13) of those notices were remailed to either a newfound address, with forwarding addresses provided by the United States Postal Service or at the request of the Class Members. *See id.* ¶ 9.

Thus, in sum, the effective non-deliverable rate of four percent (4.21%) (11 returned as undeliverable with either no new address or returned a second time/261 class members).

Accordingly, the Court should find that at all times the efforts made by the Administrator to locate and notify Class Members were diligent and resulted in a reasonable and adequate distribution of the mailed Notice of the proposed class settlement to the Class.

## **CONCLUSION**

For the reasons set forth above, Plaintiff Class respectfully requests that the Court enter the attached Proposed Order and: (1) grant final approval of the Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members, and (2) fully and finally dismiss the Litigation with prejudice.

Dated: Flushing, NY
       November 17, 2023

                                 TROY LAW, PLLC

                                 */s/ John Troy*
                                 John Troy
                                 Aaron B. Schweitzer
                                 Tiffany Troy
                                 41-25 Kissena Boulevard
                                 Suite 103
                                 Flushing, NY 11355
                                 (718) 762-1324
                                 troylaw@troypllc.com
                                 *Class Counsel*