UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
LI ZHEN ZHU, FAUSTO ASTUDILLO ORTEGA,:
and TOMAS DIAZ CRUZ, *on behalf of themselves*:
*and others similarly situated*,                          :
                                                                          :          REPORT AND
                                        Plaintiffs,     :          RECOMMENDATION
                                                                          :
                 -against-                                       :          18-CV-417 (ENV)(MMH)
                                                                          :
WANRONG    TRADING    CORP.,    TAI    HE:
TRADING CORP., YI ANG SHAO, XIANG QI:
CHEN, MING REN XU, and TAO TAO REN,     :
                                                                          :
                                        Defendants.    :
------------------------------------------------------------------ x
**MARCIA M. HENRY**, United States Magistrate Judge:

Named Plaintiff Li Zhen Zhu, Opt-in Plaintiffs Fausto Astudillo Ortega and Tomas

Diaz Cruz, and Defendants Wanrong Trading Corp., Tai He Trading Corp., Yi Ang Shao,

Xiang Qi Chen, Ming Ren Xu, and Tao Tao Ren negotiated a settlement of this class and

collective action arising under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201

*et seq.*, the New York Labor Law (the "NYLL"), Art. 6, §§ 1 *et seq.*, 26 U.S.C. § 7434, and

New York General Business Law § 349. (*See generally* Compl., ECF No. 1.)[1] Before the

Court are Plaintiffs' unopposed motions seeking: (1) final approval of the class action

settlement; (2) approval of class representatives' and class members' service awards; and (3)

approval of attorneys' fees, administration fees, and reimbursement of expenses. (ECF Nos.

127, 130, 133). The Honorable Eric N. Vitaliano referred the motions for report and

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the
ECF header unless otherwise noted.

recommendation. For the reasons set forth below, the Court respectfully recommends that the motions should be **granted in part**.

## I.     BACKGROUND

### A.     Relevant Allegations and Procedural History

Wanrong Trading Corp. and Tai He Trading Corp. (the "Corporate Defendants") are New York corporations with their principal place of business located at 32-35 Hunters Point Avenue, Long Island City, New York and 32-33 Hunters Point Avenue, Long Island City, New York, respectively. (Compl., ECF No 1 ¶¶ 10, 14.) The Corporate Defendants operate meat packaging plants at these locations. (*Id.* ¶ 9.) At all relevant times, Chen, Xu, Shao, and Ren (the "Individual Defendants") were officers and/or supervisors of the Corporate Defendants and had the power to hire and fire employees, supervise and control employee work schedules, determine employee rates and payments, and maintain employment records. (*Id.* ¶¶ 18–19, 21, 25–37.) Zhu was an employee at Wanrong Trading Corp.'s plant whose duties involved peeling skin from frozen chicken parts, for which she was paid a piece-rate for each box filled with these parts. (*Id.* ¶¶ 9, 54.) Zhu, Astudillo Ortega, and Diaz Cruz worked at Defendants' meat packaging plants at various times between March 11, 2012 through March 11, 2022. (*Id.* ¶¶ 49–50; Mem. for Final Approval, ECF No. 128 at 8.)

On March 11, 2018, Zhu commenced this collective action, on behalf of herself and all other "current and former factory workers, including but not limited to employees handling frozen meat," alleging violations of the FLSA and NYLL. (Compl., ECF No. 1 ¶¶ 64, 65.) Specifically, Zhu alleged that Defendants failed to pay her and similarly situated employees: (1) minimum and overtime wages due to their piece-work payment system; (2) failed to pay spread of hours premium; (3) failed to provide meal periods; (4) failed to provide wage notice

and statements; (5) failed to keep payroll records. (*Id.* ¶¶ 74–117.) On her own behalf, Zhu further alleged that Defendants fraudulently filed IRS tax returns and engaged in deceptive business practices. (*Id.* ¶¶ 118–124.) Defendants interposed an Answer in June 2018, denying all allegations. (Ans., ECF No. 15.)

In September 2018, Zhu moved for conditional certification of an FLSA collective action pursuant to 29 U.S.C. § 216(b), which Defendants opposed. (ECF Nos. 23, 25.) The Court granted Zhu leave to distribute a notice of pendency to all employees. (*See* Sept. 25, 2018 Min. Entry & Order.) After several iterations, the Court approved the proposed notice in March 2019. (Mar. 21, 2019 Order.) The notice of pendency, prepared in English, Chinese, and Spanish, was mailed out to employees and posted at Defendants' places of business, and included only the unpaid minimum wage and overtime claims. (*See* ECF Nos. 39, 42, 44.) On August 16, 2019, Astudillo Ortega consented to join the collective action as an opt-in plaintiff. (ECF No. 46.)

Months later, in September 2019, the parties reached a tentative settlement at a Court conference, but they were unable to finalize their settlement because Astudillo Ortega did not appear. (*See* Sept. 25, 2019 Min. Entry.) When Plaintiffs' counsel failed to arrange for a Spanish interpreter for Astudillo Ortega at a subsequent conference, the Court *sua sponte* ordered sanctions against Plaintiffs' counsel. (*See* Oct. 2, 2019 Min. Entry.) The Court then closed discovery and directed the parties to submit a proposed joint pretrial order. (*See* Oct. 10, 2019 Order.) Despite this, on October 23, 2019, Diaz Cruz filed a late consent to join as an opt-in plaintiff, which Defendants did not oppose, and the Court accepted. (ECF No. 62; Oct. 23, 2019 Order.)

The parties continued private settlement negotiations throughout 2020 and 2021.[2] (*See* ECF Nos. 72, 76, 78, 80, 83, 85, 87, 89, 91, 93, 95, 97, 101.) In December 2021, the parties notified the Court that they reached a settlement in principle with all Plaintiffs. (ECF No. 103.)

## B. Preliminary Approval of Class Settlement

After several extensions, in August 2022, Plaintiffs moved for preliminary approval of class settlement, requesting: (1) preliminary approval of the parties' Settlement Agreement; (2) certification of the proposed Class for settlement purposes; (3) appointment of Plaintiffs' counsel's law firm Troy Law, PLLC ("Troy Law") as Class counsel; (4) approval of the proposed Notice of Class Action Settlement; and (5) other relief as the Court deemed just and proper. (*See* ECF No. 117.) The Court granted the motion in August 2023, authorized notice to the class, and scheduled a fairness hearing for December 2023. (Aug. 24, 2023 Order, ECF No. 125.)

The proposed Settlement Agreement (the "Agreement") defines the Settlement Class (the "Class"), in part, as:

> Plaintiffs and all other current and former employees not exempt from receiving overtime, who worked for Defendants at the Plants . . . at any time from March 11, 2012 through March 11, 2022, and who do not opt out of the Litigation as explained below, amounting to approximately 240 Class Members.

(Settlement Agt., ECF No. 119-1 ¶ 1.5.) Members of the Class will be entitled to a share of the Settlement Fund of $280,000. (*Id.* ¶ 1.37.) After the deduction of all court-approved service awards, attorneys' fees, costs, and administration fees from the Settlement Fund, individual settlement checks will be issued by the Settlement Administrator to Class members

---

[2] Meanwhile, the Court held in abeyance the pending sanctions order against Plaintiffs' counsel per request of the parties.

within twenty days after the final effective date in accordance with the allocation formula set forth in the Agreement.  (*Id.* ¶¶ 1.36. 3.1.1.)

In addition to the payments to Class members, the Agreement also contemplates the following awards to be paid out of the Settlement Fund: (1) attorneys' fees "not to exceed . . . $94,000," plus costs and expenses; (2) administration fees "not to exceed . . . $16,000"; and (3) service awards to Class representatives in the amount of $40,000 total.  (*Id.* ¶¶ 3.1.2, 3.2 & 3.3.)  If Class members do not cash their checks after 120 days of receipt, those amounts will be returned to the Settlement Fund.  (*Id.* ¶ 3.1.6.)  These residual funds may be applied to any unforeseen liabilities, claims, expenses, and costs, with approval from all parties' counsel and any remaining sum will revert back to Defendants.  (*Id.*)

Upon endorsing the check, a Class member fully releases and discharges Defendants of all wage and hour claims raised under the FLSA and NYLL and other applicable wage and hour laws that could have been brought in this litigation.  (*Id.* ¶ 4.1.)

## C.    Final Approval Motion and Fairness Hearing

In November 2023, Plaintiffs filed the instant motions for final approval of the class settlement, approval of service awards, and approval of the attorneys' fees. (*See* ECF Nos. 127–137.)  Judge Vitaliano referred the motions for report and recommendation. (Nov. 28, 2023 Order Referring Mot.)  The Court held a fairness hearing on December 7, 2023, after which Plaintiffs filed supplemental briefing to address issues discussed at the hearing.  (Dec. 7, 2023 Min. Entry; Dec. 7, 2023 Hr'g Tr. ("Tr."), ECF No. 138; Pls.' Supp. Ltr., ECF No. 139.)

## II.  **LEGAL STANDARD**

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  In the Second Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022).  To grant final approval of a class action settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." *Faroque v. Park W. Exec. Servs.*, No. 15-CV-6868 (DLI)(CLP), 2020 WL 9812905, at *3 (E.D.N.Y. Jan. 29, 2020) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)); Fed. R. Civ. P. 23(e)(2).  "Whether a settlement is fair is a determination within the sound discretion of the court." *Id.* (citing *Levitt v. Rodgers*, 257 F. App'x 450, 453 (2d Cir. 2007)).

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020) (citing *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012)).  "Thus, a proposed settlement class must satisfy all the requirements for class certification under Rule 23, meaning that (1) all the prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—must be met; and (2) at least one of the three requirements of Rule 23(b) must be met." *McLaughlin v. IDT Energy*, No. 14-CV-4107 (ENV)(RML), 2018 WL 3642627, at *4 (E.D.N.Y. July 30, 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)).

Once the threshold Rule 23(a) and (b) requirements are satisfied, the Court considers whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "Courts

evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider the four factors outlined in Rule 23(e)(2) holistically, taking into account – among other substantive considerations stated in the rule – the proposed attorneys' fees and incentive awards." *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). The first two factors are procedural in nature: that is, adequate representation of the class and arm's length negotiations. *Id.* at 242 (citing Fed. R. Civ. P. 23(e)(2)(A)–(B)). The latter two guide the substantive review of a proposed settlement: adequacy of relief and equitable treatment. *Id.* at 242–43 (citing Fed. R. Civ. P. 23(e)(2)(C)–(D)); *see also Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *6 (E.D.N.Y. Sept. 9, 2024).

## III.    DISCUSSION

### A.    Final Certification of the Settlement Class[3]

As set forth below, the Court finds that the requirements under Rule 23(a) and 23(b)(3) have been satisfied and respectfully recommends certification of the proposed class.

#### 1.    Rule 23(a) Requirements

##### a.    Numerosity

*First*, Plaintiffs have demonstrated that the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Numerosity is presumed when the class is at least 40 members. *Flores*, 2022 WL 13804077, at *3 (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)). While Plaintiffs need not provide a precise quantity, they "must show some evidence of or reasonably estimate the number of class members." *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015). Here, the Class

---

[3] Plaintiffs' motion papers fail to address the relevant Rule 23(a) and Rule 23(b)(3) factors.

consists of 261 unique Class members, which Defendants identified following class certification and preliminary settlement approval.  (Butler Decl., ECF No. 129-1 ¶ 6.)  As such, numerosity is easily satisfied here.  *Flores*, 2022 WL 13804077, at *3 (232 class members); *see also Bayne v. NAPW, Inc.*, No. 18-CV-3591 (MKB)(RER), 2021 WL 4822426, at *5 (E.D.N.Y. Aug. 10, 2021) (between 60 and 200 potential class members), *adopted by* 2021 WL 4820603 (E.D.N.Y. Oct. 15, 2021).

### b. Commonality

*Second*, Plaintiffs have met the commonality requirement of Rule 23(a)(2) that there are questions of law or fact common to the Class.  Fed. R. Civ. P. 23(a)(2).  "'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . . Their claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *McLaughlin*, 2018 WL 3642627, at *4 (quoting *Dukes*, 564 U.S. at 349–50).  Plaintiffs allege several common factual and legal issues among Class members, including whether, *inter alia*, Defendants maintained a policy, pattern, or practice of (i) failing to pay minimum and overtime wages; (ii) failing to pay spread-of-hours premium; and (iii) failing to comply with the NYLL's requirement to provide wage statements and wage and hour notices.  These alleged wage and hour violations involve common operative facts stemming from Defendants' policies that affected the Class members in the same way.  *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 98 (E.D.N.Y. 2015) (plaintiffs established commonality and typicality when all class members' claims all arise from the same violations of the FLSA and NYLL relating to

failure to pay back pay, minimum, and overtime wages). Accordingly, Rule 23(a)(2)'s commonality requirement has been met.

### c. Typicality

Similarly, Plaintiffs demonstrate typicality, which requires that "the claims or defenses of the representative parties are typical of [those] of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997); *see also Pickard v. OnSite Facility Servs., LLC*, No. 5:22-CV-207 (AMN/ML), 2023 WL 7019256, at *4 (N.D.N.Y. Oct. 25, 2023) ("Typicality requires that a class representative have "the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions."). "'[M]inor variations in the fact patterns underlying [the] individual claims' do not preclude a finding of typicality." *Flores*, 2022 WL 13804077, at *3 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)). Plaintiffs and Class members all allege the same violations of the FLSA and NYLL arising out of their employment at Defendants' meat packaging plants. Further, the fact that Diaz Cruz and other workers are in a separate department from Zhu does not preclude a finding of typicality, because Defendants' workers across all departments claimed that Defendants paid them unlawfully pursuant to the same company policies. (*See* Tr. 12:13–13:1.) Therefore, Plaintiffs' claims are typical of those of the Class.

### d. Adequacy

Finally, Plaintiffs must show that named Plaintiffs will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In order to meet the final requirement,

adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is qualified, experienced and generally able to conduct the litigation." *Emeterio v. A&P Rest. Corp.*, No. 20-CV-970 (KHP), 2022 WL 274007, at *4 (S.D.N.Y. Jan. 26, 2022) (citing *Marisol A.*, 126 F.3d at 378). Here, the named Plaintiff and two opt-in Plaintiffs are similarly situated workers employed at the same meat packaging plants operated by Defendants who were subject to the same allegedly unlawful wage payment practices and seek similar damages. Because their interests are aligned with the interests of other Class members, the Court finds that Plaintiffs will adequately protect the interests of the entire Class. Moreover, the Class is represented by Troy Law, a law firm with considerable experience with employment and labor law that has represented other similar cases representing immigrant workers to recover unpaid wages under federal and state laws. (Troy Decl. for Final Approval, ECF No. 129 ¶¶ 6, 9–10.) In particular, Troy Law has litigated and settled a number of multi-plaintiff FLSA collective actions in this district, and therefore, is qualified to handle this litigation. (*Id.* ¶ 17.) Therefore, Plaintiffs will fairly and adequately protect the Class.

## 2. Rule 23(b)(3) Requirements

As relevant here, Plaintiffs must also satisfy the Rule 23(b)(3) requirement that "the questions of law or fact common to class members predominate over individual questions and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) ("Rule 23(b)(3) added to the complex-litigation arsenal class actions for damages designed to secure judgments binding all class members save those who affirmatively elected to be excluded."). "Together, the predominance and superiority requirements were designed

to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347 (ER), 2024 WL 1157074, at *6 (S.D.N.Y. Mar. 18, 2024) (cleaned up).  Plaintiffs satisfy both 23(b)(3) requirements.

"The predominance requirement asks if 'resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Hernandez*, 306 F.R.D. at 98 (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)).  Where plaintiffs are "unified by a common legal theory and by common facts, the predominance requirement is satisfied." *Id.* (cleaned up).  Here, Plaintiffs' common factual allegations and common legal theory—that Defendants violated federal and state wage and hour laws through the implementation of their pay policies at the same meat packaging plants during the relevant period—predominate over any factual or legal variations among Class members, such as their length of employment or total wages owed. *See e.g.*, *Vasquez v. A+ Staffing LLC*, No. 22-CV-2306 (CLP), 2024 WL 3966246, at *13–14 (E.D.N.Y. Aug. 27, 2024) (finding predominance where employers allegedly failed to pay plaintiffs prevailing wages, overtime, holiday premiums, and supplemental benefits and to provide plaintiffs with proper wage notices and wage statement).

Rule 23(b)(3) also requires that a class action must be a "superior method" to individual litigation.  The rule considers factors such as: (A) the class members' interests in individually controlling separate actions, (B) the extent and nature of any litigation already begun, (C) the desirability of concentrating litigation in a particular forum, and (D) the difficulties in managing a class action.  *Vasquez*, 2024 WL 3966246, at *13 (citing Fed. R. Civ. P.

23(b)(3)(A)–(D)).  "The Court must conclude that 'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010)).  Here, given the presumably limited financial resources of the Class members and the relatively small value of each Class member's claim, Class members have a strong interest in proceeding as a class action than individual lawsuits.  Without this mechanism, the Class members may not be afforded the same meaningful recovery.  With respect to the second factor, Plaintiffs have not indicated that there is another pending litigation related to the same claims brought under this action.  Further, all alleged conduct occurred at Defendants' meat packaging plants in Queens, New York, so concentrating the litigation in the Eastern District of New York is highly desirable.  Finally, neither Plaintiffs nor Class counsel, who has substantial experience in managing FLSA class actions in this district, has expressed any particular difficulty in managing this action.  Based on these considerations, the Court finds that the certification of this Class will conserve judicial time and resource and promote uniformity in decisions by avoiding piecemeal litigation of over 200 separate cases.  *Brown*, 609 F.3d at 483.  Therefore, proceeding as a class action is the superior method.

### B.  Notice to Class

Next, the notice requirement under Rule 23(e)(1) is satisfied.  Rule 23(e)(1)(B) provides that the Court "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23(e)(1)(B).  By order dated August 24, 2023, the Court preliminarily approved Plaintiffs' proposed notice, finding that the notice "fairly, accurately, and reasonably informs Class

Members" of the appropriate information about the litigation, the Class, the identity of Class counsel, the essential terms of the settlement, and other pertinent information, and "satisfies the notice requirements under Rule 23(e) [and] due process requirements." (Prelim. Approval Order, ECF No. 125 at 5–6.) The Settlement Administrator mailed the notice, prepared in English, Spanish, and Chinese, to 261 unique Class members using the mailing list provided by Defendants. (Butler Decl., ECF No. 129-1 ¶¶ 6–8.) Twenty-four notice packets were returned by the post office, and the Settlement Administrator conducted additional searches to remail the packets to 13 newfound addresses. (*Id.* ¶ 9.) The Court-approved notice packet "advised Class members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action" as well as informed the Class of "applicable deadlines and other events, including the Final Approval Hearing." (*Id.* ¶ 5.) Therefore, the notice was "fair and adequate in both form and content to apprise possible class members of the settlement and to satisfy the requirements of the federal rules and of due process." *Hernandez*, 306 F.R.D. at 99.

Accordingly, the Notice requirement under Rule 23(e)(1) is satisfied.

## C.     CAFA Notice

The Court addresses the parties' compliance with the notice provision under Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA"). The CAFA notice provision states, in relevant part, that Defendants must serve the appropriate state and federal officials a notice of the proposed settlement "no later than 10 days" after the proposed settlement of a class action has been filed in court. *See* 28 U.S.C. § 1715(b). The requirements under CAFA apply to "any" class actions brought under Rule 23. *Perez v. Jupada Enters., Inc.*, No. 10-CV-3118 (JMF), 2012 WL 3042928, at *2 (S.D.N.Y. July 25, 2012); *see also* 28 U.S.C. § 1711(2).

CAFA further states that the Court may not issue an order awarding final approval of a proposed settlement earlier than 90 days after the later of the dates on which the appropriate federal and state officials have been served. *See* 28 U.S.C. § 1715(d).

The parties' compliance with the CAFA notice provision is unclear from this record. Plaintiffs refer briefly to the 90-day notice period (*see* Proposed Order, ECF No. 127-1 at 2 ¶ 3), but the parties and the Class administrator have not submitted any declaration or affidavit showing compliance with the CAFA notice provision. However, Class counsel's billing records suggest efforts to comply with the statute. (Billing Records, ECF No. 135-1 at 12, 13 (billing 0.25 hours on September 1, 2022 to "Review Def emails and req for CAFA documents" and 0.2 hours on August 25, 2023 to "Confer Administrator and OC re CAFA Mailing."). For this reason, the Court directed the parties to file proof, by affidavit or declaration, of their compliance with § 1715(b) by October 10, 2024. (*See* Sept. 30, 2024 Order.)

Thus, the Court respectfully recommends that any decision on final approval of the settlement should be held in abeyance until the 90-day period under Section 1715(d) has expired and the parties have confirmed their compliance via affidavit or declaration.

### D. Approval of the Class Action Settlement

Finally, Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). For the reasons set forth below, the Court respectfully recommends the final approval of the parties' class action settlement.

### 1. Procedural Fairness

"To evaluate the procedural fairness of a proposed settlement, a court must expressly consider the two factors under Rules 23(e)(2)(A)–(B): whether 'the class representatives and class counsel have adequately represented the class' and whether 'the proposal was negotiated at arm's length.'" *Schutter*, 2024 WL 4118465, at *7 (quoting Fed. R. Civ. P. 23(e)(2)(A)–(B)).

*First*, as to Rule 23(e)(2)(A), the Court assesses "whether: 1) Lead Plaintiffs' interests are antagonistic to the interests of the other members of the class and whether 2) Lead Counsel are qualified, experienced and able to conduct the litigation such that Lead Plaintiffs have manifested their interest in vigorously pursuing class claims." *In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059 (KAM)(SJB), 2024 WL 1719632, at *4 (E.D.N.Y. Apr. 22, 2024) (cleaned up). The Court has already found adequacy of the Class representatives and Class counsel in the Rule 23(a)(4) analysis. (*See* Section III.A.1.d., *supra*.) "Given the similarity of the analyses regarding adequacy under Rule 23(e)(2)(A) and Rule 23(a)(4), the Court finds that the class representatives and Class Counsel provided adequate representation to the putative classes under Rule 23(e)(2)(A)." *Schutter*, 2024 WL 4118465, at *7.

*Second*, applying Rule 23(e)(2)(B), "[b]eing familiar with the strengths and weaknesses of each side's case and the risks posed by continued litigation, this Court is of the view that the settlement was the product of arms-length negotiations." *Faroque*, 2020 WL 9812905, at *4. The parties reached settlement after substantial exchange of documents and extensive negotiations over two years. Class counsel conducted a thorough factual investigation, including witness interviews, legal research on the merits of the claims, the likelihood of success in certifying the class, and analysis of damages to assist in the negotiation. (Troy Decl.

for Final Approval, ECF No. 129 ¶¶ 39–44.)  The parties also appeared for a settlement

conference before the Court in September 2019.  (*See* Sept. 25, 2019 Min. Entry).  Though

their tentative settlement could not be finalized due to an opt-in Plaintiff's absence at the

conference, counsel continued to engage in good-faith, arms-length negotiations since October

2019 in attempt to resolve the claims on their own.  (Troy Decl. for Final Approval, ECF No.

129 ¶ 46.)  The parties reached an agreement in principle in December 2021, after which they

provided regular updates to the Court while continuing to finalize the precise wording of the

Agreement.  (*Id.* ¶¶ 46–47.)  The extensive procedural history of this case illustrates both

counsel's exhaustive efforts to represent the interests of their clients through substantial

discovery and arms-length negotiations.  *Flores*, 2022 WL 13804077, at \*6 (S.D.N.Y. Oct. 21,

2022)

Accordingly, the Court finds that the process of reaching the class settlement in this

case was procedurally fair.

### 2. Substantive Fairness

To evaluate the substantive fairness of a settlement, the Second Circuit historically

enumerated nine factors (known as the "*Grinnell* factors"):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the
> trial; (7) the ability of the defendants to withstand a greater judgment; (8) the
> range of reasonableness of the Settlement Fund in light of the best possible
> recovery; and (9) the range of reasonableness of the Settlement Fund to a
> possible recovery in light of all the attendant risks of litigation.

*Flores*, 2022 WL 13804077, at \*6 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463

(2d Cir. 1974)).  More recently, the Second Circuit clarified that courts must "expressly

consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses*, 79 F.4th at 244 (citing Fed. R. Civ. P. 23(e)(2)(C)-(D)). "In particular, such evaluation must be conducted in tandem with reviewing the appropriateness of the proposed attorneys' fees and incentive awards encompassed in the settlement agreement." *Schutter*, 2024 WL 4118465, at *8.

### a. Adequacy of Class Relief

To assess whether a proposed settlement provides adequate relief for the putative class under Rule 23(e)(2)(C), the Court takes into account several factors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

The first statutory factor under Rule 23(e)(2)(C)(i), which largely overlaps with the first *Grinnell* factor of "complexity, expense, and likely duration of the litigation," leans toward settlement approval. *See Schutter*, 2024 WL 4118465, at *8. Class counsel recognizes the risk of "additional expense and delay via a complicated trial" and "seek[] to avoid significant expense and delay, and instead ensure recovery for the class." (Mem. for Final Approval, ECF No. 128 at 13.) Likewise, Defense counsel stated at the fairness hearing that Defendants "would like to move on" and that the "cost of defense is significant to handle a class action matter." (Tr. 19:18–25.) The parties' understanding of the complexity and expenses of continued litigation and their desire to avoid those costs support final approval of the settlement.

The second statutory factor of "effectiveness of any proposed method of distributing relief to the class" is also met. Fed. R. Civ. P. 23(e)(2)(C)(ii). "In considering the effectiveness of the proposed method of distributing the settlement to class members, the Court must consider whether the proposed method will deter or defeat unjustified claims without imposing an undue demand on class members." *In re Tenaris*, 2024 WL 1719632, at *9 (citing *Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-456 (RPK)(LB), 2021 WL 7906584, at *7 (E.D.N.Y. May 25, 2021)). The distribution method and claims-processing formula "need only have a reasonable rational basis, particularly if recommended by experienced and competent class counsel." *Id.* Here, the Agreement sets forth an effective method of processing each Class member's claim and distributing the settlement payments. (*See* Settlement Agt., ECF No. 119-1 ¶¶ 1.36, 3.1.1 & 3.1.6.) Specifically, the Settlement Fund will be allocated according to each Class member's "proportionate shares" using the number of weeks the Class member worked at Defendants' meat packaging plants. (*Id.* ¶ 3.1.1.) Each Class member will receive a "point" for every full or partial week worked. (*Id.*) Then, their points will be multiplied by the "Point Value," which is calculated by dividing the aggregate number of points accrued by all of the Class members who do not timely opt out of the Settlement from the net Settlement Fund. (*Id.* ¶ 3.1.1.2.) Finally, the checks will be issued and distributed by an experienced Claims administrator within twenty days of the effective date of the Agreement. (*Id.* ¶ 3.1.5; Butler Decl., ECF No. 129-1 ¶ 3.) Only the Class members who did not timely opt out and who provided a completed and signed W-4 and W-9 form to the Class administrator will receive the settlement checks. (*Id.* ¶ 3.1.1.3.) Upon review of these provisions in the Agreement and the Class administrator's declaration regarding the

allocation of the Settlement Fund, the Court is satisfied that the proposed method is effective and reasonable.

The third statutory factor directs the Court to examine "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, pursuant to the Agreement, Class counsel seeks attorneys' fees of $94,000 to be paid from the Settlement Fund. (Settlement Agt., ECF No. 119-1 ¶ 3.2.; Mot. for Fees, ECF No. 133 at 1; Troy Decl. for Fees, ECF No. 135 ¶ 8.) This reflects an award of approximately one-third of the $280,000 Settlement Fund. This is "within the range of fee award percentages that courts in this Circuit have approved." *Flores*, 2022 WL 13804077, at *10 (collecting cases). Moreover, as discussed herein, the lodestar multiplier is well within the range of what is considered reasonable for FLSA class actions in this Circuit; therefore, the attorneys' fees amount is reasonable. (*See* Section III.G, *infra*.) As to the timing of payment, the Agreement does not contemplate a specific date by which the disbursement of attorneys' fees will occur— and whether Class counsel will receive their fee before the Settlement checks are distributed to the Class members. (*See* Settlement Agt., ECF No. 119-1 ¶ 3.2.) However, courts have held that payment to attorneys before payments to claimants are disbursed "does not undercut that case where, as here, the majority of other factors weigh significantly" in favor of final settlement approval. *Schutter*, 2024 WL 4118465, at *9 (quoting *Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021)). Therefore, even if Class counsel were to be paid before Class members, that timing will not weigh significantly against final approval of the Settlement.

The fourth statutory factor requires the Court to consider "any agreement required to be identified under Rule 23(e)(3)," that is, "any agreement made in connection with the

proposal." Fed. R. Civ. P. 23(e)(2)(c)(iv) & (e)(3).  There is no evidence in the record before the Court that such agreement exists between the parties.  Therefore, this factor is neutral and does not impede the final approval of the Settlement.

### b.      Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  In evaluating this factor, courts may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Moses*, 79 F.4th at 245.  Particularly, "the existence and extent of incentive payments is relevant to whether 'class members [are treated] equitably relative to each other.'" *Schutter*, 2024 WL 4118465, at *10.  Courts must ensure that the settlement protects "the interests of class representative who play an active role in the litigation" while also "reject[ing] incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* (citing *Moses*, 79 F.4th at 245.)

As noted, the Settlement Fund will be distributed to each Class member according to their "proportionate shares," which are calculated by the number of weeks each Class member worked.  (*See* Settlement Agt., ECF No. 119-1 ¶ 3.1.1.)  Courts have found that such "[p]ro rata distribution schemes are sufficiently equitable and satisfy the requirements of Rule 23(e)(2)(D)." *Schutter*, 2024 WL 4118465, at *10 (citing *Cymbalista*, 2021 WL 7906584, at *9).  In addition, the Agreement provides for service awards for each of the Class representatives in the following amounts: named Plaintiff Zhu would receive $20,000 and opt-in Plaintiffs Astudillo Ortega and Diaz Cruz would receive $10,000 each.  (Settlement Agt.,

ECF No. 119-1 ¶ 3.1.2; *see generally* Mot. for Service Awards, ECF No. 130.)  As discussed herein, these service awards are appropriate to compensate Class representatives for "the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained," and the amounts are in the reasonable range of service awards awarded by courts in this Circuit for FLSA class actions.  (*See* Section III.F., *infra*.)  *See also Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *9 (E.D.N.Y. Apr. 11, 2016).  Further, the scope of the release in the Agreement (*see generally* Settlement Agt., ECF No. 119-1 § 4.1) "applies uniformly to putative class members, and does not appear to affect the apportionment of the relief to class members."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47 (E.D.N.Y. 2019). .  For these reasons, the Court finds that the Class members are treated equitably pursuant to the Agreement.  Accordingly, the Rule 23(e)(2)(D) factor also weighs in favor of granting final approval.

### c.    Remaining *Grinnell* Factors

### i.    Reaction of the Class to the Settlement

As to the second *Grinnell* factor, the Settlement Administrator confirmed that no Class member has objected to the settlement terms leading up to the fairness hearing after the notice of this class action was mailed to all 261 potential Class members, of which only 11 notice packets were returned as undeliverable.  (Butler Decl., ECF No. 129-1 ¶ 8, 12; Butler Supp. Decl., ECF No. 137-1 ¶ 6.)  No Class member has requested exclusion from the settlement either.  (Butler Decl., ECF No. 129-1 ¶ 11; Butler Supp. Decl., ECF No. 137-1 ¶ 5.)  This indicates a "overwhelmingly positive response" that "reinforces the Court's conclusion that the Settlement is fair, adequate and reasonable."  *Faroque*, 2020 WL 9812905, at *6 (citing

*Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 432–33 (S.D.N.Y. 2014) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness.")).  Thus, the second *Grinnell* factor also weighs in favor of approval.

### ii.  Stage of Litigation and Discovery

With respect to the third factor, the parties engaged in extensive discovery since the initial conference took place in August 2018 and certified close of discovery in October 2019. (*See* Aug. 2, 2018 Min. Entry; Apr. 11, 2019 Am. Scheduling Order; Sept. 11, 2019 Min. Entry; Oct. 10, 2019 Order, ECF No. 57.)  The parties then filed a proposed joint pretrial order. (*See* ECF No. 58.)  This record reflects that the parties clearly "had an adequate appreciation of the merits of the case before negotiating" in 2020 and 2021.  *Fujiwara*, 58 F. Supp. 3d at 433 (finding that counsel was "sufficiently aware of the merits of the case" because they had already conducted depositions and document discovery of payroll records, work schedules, and employee files); *see also Vasquez*, 2024 WL 3966246, at *17.  Given the post-discovery stage at which the parties began settlement negotiations, the Court finds that the third factor also weighs in favor of settlement approval.

### iii.  Risks of Establishing Liability and Damages

The Court further concludes that the fourth and fifth factors, *i.e.*, the risks in establishing liability and damages—respectively—also weigh in favor of approval.  *First*, as to liability, Class counsel acknowledges that they face a real risk because Defendants "continue to adamantly deny the theories of liability and facts supporting liability" in this case. (Tr. 20:2– 6.)  Class counsel further recognizes the significant risk "because of the fact-intensive nature of proving liability under the FLSA and the NYLL, and in light of Defendants' available defenses." (Mem. for Final Approval, ECF No. 128 at 15.)  Moreover, defense counsel rightly

points out Plaintiffs' risks in proving their wage notice and statement claims under the NYLL, specifically, as to whether Plaintiffs have standing over those claims. (Tr. 20:20–21:7.) These considerations tip the scale in favor of final approval because settlement avoids the risks and uncertainties inherent in trial.

### iv.    Risks of Maintaining Class Action

With respect to the sixth factor, Plaintiffs recognize that maintaining a class through trial would not be simple and that there is a risk that the Court may decertify the Class upon experienced defense counsel's motion practice. (Mem. for Final Approval, ECF No. 128 at 16.) Such "[c]ontested collective and class certification motions would likely require extensive discovery and briefing." *Viafara v. MCIZ Corp.*, No. 12-CV-7452 (RLE), 2014 WL 1777438, at *7 (S.D.N.Y. May 1, 2014). Therefore, a settlement that eliminates the risk of decertification and avoids a prolonged litigation, expenses, and delay, is favored.

### v.    Defendants' Ability to Withstand Greater Judgment

As to the seventh *Grinnell* factor, Class counsel advised the Court at the fairness hearing that it is "not entirely clear" that Defendants would be able to withstand a judgment greater than a $280,000 settlement. (Tr. 9:5–11). Defense counsel provided further context that Defendants' business is a food distribution company that "struggled enormously through COVID and is trying to pull itself back together." (Tr. 22:12–22.) Considering these statements made by both counsel regarding Defendants' current financial circumstances, the Court finds that it is unlikely that Defendants will be able to withstand a greater judgment should Plaintiffs prevail at trial. Therefore, the seventh *Grinnell* factor also weighs in favor of final approval.

### vi.    Range of Reasonableness of Settlement

Finally, as to the eighth and ninth factors of evaluating the range of reasonableness of the settlement in light of the best possible recovery and in light of all the attendant risks, the Court finds that these factors also warrant a final approval of the settlement.  The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum."  *Viafara*, 2014 WL 1777438, at *7 (cleaned up). Instead, "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).  The proposed settlement of $280,000 is reasonable when viewed in light of the best possible recovery and in light of all the attendant risks.  According to Class counsel, this sum "represents a significant recovery compared to the damages calculations performed by Plaintiff's counsel to assess the maximum possible recovery."  (Troy Decl. for Final Approval, ECF No. 129 ¶ 53.)  Class counsel estimates that the Class's best available damages award is $325,000 by taking the estimated average of unpaid wages per year for each Class member, using a sample analysis, then multiplying it by the average number of years worked and the number of Class members.  (Pls.' Supp. Ltr., ECF No. 139 at 1–3.)  Class counsel acknowledges that the maximum possible recovery could be as high as $2.87 million—but that this was not "a reasonable assumption" for purposes of evaluating settlement because of the outliers in the sample.  (*Id.*)  In light of Class counsel's calculations and reasoning, the Court finds that the range of recovery is reasonable.  Moreover, a settlement ensures that immediate payment of substantial amounts is made to class members, even if the recovery post-trial may

be hypothetically larger.  *Hall*, 2016 WL 1555128, at *8.  Thus, the eighth and ninth *Grinnell* factors weigh in favor of final approval.

Accordingly, the class settlement is both procedurally and substantively fair.  As such, the Court respectfully recommends that the class action settlement should be approved under Rule 23(e).

### E.  Approval of FLSA Collective Action Settlement

Plaintiffs also seek final approval of the Agreement pursuant to the FLSA.  For reasons stated below, the Court recommends that the parties' FLSA collective action settlement also should be approved.

Because "[t]he standard for approval of an FLSA settlement is lower than for a Rule 23 settlement," satisfaction of the *Grinnell* factor analysis will necessarily satisfy the standards of approval for the FLSA settlement.  *Flores*, 2022 WL 13804077, at *9 (citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012)); *see also Hall*, 2016 WL 1555128, at *8 (finding that because FLSA collective actions do not implicate the same due process concerns as Rule 23 actions, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.").  Nonetheless, judicial approval of FLSA settlements is still required by courts in the Second Circuit.  *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).  As such, when a case involves both a class action and collective action, courts in this Circuit analyze the *Grinnell* factors with respect to approval of the class action, then look to *Cheeks* for the FLSA collective action analysis.  *See D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-CV-3334 (JMW), 2023 WL 4838156, at *9 (E.D.N.Y. July 28, 2023) (citing *Mills v. Capital One, N.A.* No. 14-CV-1937 (HBP), 2015 WL 5730008 (S.D.N.Y. Sept. 30, 2015).  In other words, "in addition

to the factors that govern approval of any class action settlement, a court evaluating the settlement of an FLSA action must take into account other considerations, including any confidentiality requirements, the scope of any release, and any provision for attorneys' fees." *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15-CV-9705 (JCF), 2017 WL 2198158, at *7 (S.D.N.Y. May 17, 2017) (citing *Cheeks*, 796 F.3d at 206.)

The Agreement largely "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Quispe v. Stone & Tile Inc.*, 583 F. Supp. 3d 372, 375 (E.D.N.Y. 2022); *see also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). The Agreement contains a reversion clause that is permissible given the circumstances of this case. (*See* Settlement Agt., ECF No. 119-1 § 3.16 ("After the 120 days, any uncashed settlement checks, and all other amounts remaining in the fund shall be returned to the Defendants.").) A reversion clause is subject to some scrutiny because it provides that any unclaimed settlement funds will revert back to the defendant, as opposed to, for example, being distributed among the Class members who claimed their settlement amounts. *See, e.g.*, *Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 225 (W.D.N.Y. 2017). However, reversion clauses are not necessarily prohibited in settlement agreements, although they may warrant a decrease of the award of attorneys' fees in some circumstances where there may be risk of "low participation rates for 'claims made settlements' (i.e., settlements that require the filing of a claim form in order to share in the settlement proceeds)." *See, e.g.*, *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 388 (S.D.N.Y. 2017); *see also Espinal v. Victor's Cafe 52nd St., Inc.*, No. 16-CV-8057 (VEC), 2019 WL 5425475, at *4 (S.D.N.Y. Oct. 23, 2019) ("Although parties are entitled to structure a settlement in this way, the settlement structure must be considered when

determining an appropriate percentage for attorneys' fees, particularly where . . . there was good reason to suspect that the claims rate would be quite low and that there would be a substantial reversion.").  According to the Claim administrator's declaration, there is little concern of a low claims rate by Class members; Class members have already been notified by mail, with only 11 out of 261 notice packets returned as undeliverable.  (Butler Decl., ECF No. 129-1 ¶ 9.)  Therefore, because there is no reason to suspect that there would be substantial reversion for the benefit of Defendants, the agreement's reversion clause does not preclude a finding of a fair and reasonable settlement.

Further, the Agreement's release provision is narrowly tailored to "any and all claims for any wage-and-hour violations . . . that may have occurred arising from or relating to each Class Member's employment or engagement with Corporate Defendants[,]" (Settlement Agt., ECF No. 119-1 § 4.1), and thus not impermissibly broad.  *See Garay v. Euro Metalsmith*, No. 23-CV-3451 (ARR)(JMW), 2023 WL 8435866, at *5 (E.D.N.Y. Dec. 5, 2023) ("Although the agreement contains a release, it is not an unfettered general release requiring that Plaintiffs waive any and all claims that they may have against Defendants," and is thus reasonable).

On the other hand, the Agreement contains a highly restrictive confidentiality provision that is inconsistent with the spirit of the FLSA.  (*See* Settlement Agt., ECF No. 119-1 § 5.14.) Section 5.14 provides, in relevant part, "Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel agree that they will not issue or cause to be issued any press release or communication to any third party and will not otherwise communicate to any media or media representative . . . , information regarding this Litigation, the claims asserted therein, the settlement of the Litigation and/or this Agreement, or the amount of money paid to resolve the Litigation."  (*Id.*)  Further, the provision limits the parties and their counsel to only responding

that "the matter has been resolved to the satisfaction of all parties" if contacted by the press or other media.  (*Id.*)  Such confidentiality provision that "bars plaintiffs from opening discussing their experiences litigating this wage-and-hour case" is prohibited in FLSA settlement agreements because such restrictions "run afoul of the purposes of the FLSA and the 'public' independent interest in assuring that employees' wages are fair."  *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015); *see Perez v. 66 Meat Corp.*, No. 22-CV-7003, 2024 WL 2716851, at *4 (E.D.N.Y. May 28, 2024) (collecting cases that reject confidentiality provisions that prohibit plaintiffs from disclosing the terms of the settlement), *adopted by* 2024 WL 3161838 (E.D.N.Y. June 25, 2024).  Moreover, the purported "carve-out" that "the parties shall be free to make whatever disclosures they deem necessary and appropriate to their attorneys and financial or tax advisors . . . , government entities, and the Court, provided those disclosures are truthful" does not cure the impermissibly drafted confidentiality provision because the provision still prevents Plaintiffs from openly discussing their experiences with others.  *Id.* (quoting *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting confidentiality stipulation allowing disclosure to only counsel, accountants, spouse, and immediate relatives) (citing *Cheeks*, 796 F.3d at 199).

Therefore, the Court respectfully recommends that Section 5.14 should be struck from the Agreement.  The remaining provisions of the Agreement may remain in effect in accordance with the Agreement's severability clause.  (*See* Settlement Agt., ECF No. 119-1 § 5.7.)  Upon striking of the impermissible confidentiality clause, the Court respectfully recommends approval of this FLSA collective action settlement.

### F.    Service Awards

The Agreement provides for service awards for each of the Class representatives in the following amounts: named Plaintiff Zhu would receive $20,000 and opt-in Plaintiffs Astudillo Ortega and Diaz Cruz would receive $10,000 each.  (Settlement Agt., ECF No. 119-1 ¶ 3.1.2; *see generally* Mot. for Service Awards, ECF No. 130.)

"Courts regularly grant requests for service awards in class actions 'to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs.'" *Hall*, 2016 WL 1555128, at *9 (quoting *Viafara*, 2014 WL 1777438, at *16). Recognition payments are "particularly appropriate in the employment context" because "former or current employee[s] of the defendant . . . by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Flores*, 2022 WL 13804077, at *10 (*quoting Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005)).  Here, the service award compensates the named and opt-in Plaintiffs for their services rendered throughout litigation, including, *inter alia*, their regular communication with Class counsel via telephone, zoom, and in-person meetings; their assistance with the preparation of the Complaint; responses to discovery requests; drafting of motions and affidavits; and participation in settlement negotiations.  (Troy Decl. for Service Awards, ECF No. 132 ¶¶ 4–5.)

The Class representatives' requested service awards of $20,000 and $10,000 are reasonable and within the range of awards granted in this district.  *See, e.g.*, *Viafara*, 2014 WL 1777438, at *16 (finding service award of $12,500 to named Plaintiff for one settlement and a separate award in equal amount for another settlement to be reasonable); *Massiah*, 2012 WL

5874655, at *5 (collecting cases showing approval of service awards ranging from $5,000 to $30,000). As Class counsel states, the Class representatives "had to weigh significant potential risk of retaliation from their current employers, and put their ability to secure future employment at risk" by participating in this litigation. (Troy Decl. for Service Awards ¶ 8; Tr. 10:14–11:3.) Service awards are common and appropriate in class action cases where class representatives undertake such risks and burdens on behalf of the Class in litigating the case. *D'Angelo*, 2023 WL 4838156, at *10. It is therefore particularly reasonable for named Plaintiff Zhu to receive twice as large service award than the opt-in Plaintiffs because Zhu's involvement began before case inception in 2018. Her time and efforts expended in assisting with the prosecution of the case, as well as the risks incurred, was therefore higher than opt-in Plaintiffs Astudillo Ortega and Diaz Cruz, who joined at a later stage of the litigation in August and October 2019, respectively.

Having reviewed the supporting declaration from Class counsel regarding the time and effort devoted by the Class representatives in assisting in the prosecution of the case, the Court finds the requested service awards to be reasonable. Accordingly, the Court respectfully recommends that the motion for service awards should be granted.

### G. Attorneys' Fees

Class counsel requests attorneys' fee in the amount of $94,000, asserting that it is "approximately one-third of the Settlement Fund[.]" (Mot. for Fees, ECF No. 133 at 1; Troy Decl. for Fees, ECF No. 135 ¶ 8; Settlement Agt., ECF No. 119-1 ¶ 3.2.)

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Both the lodestar and the percentage of the fund methods are available to district judges

in calculating attorneys' fees[.]" *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). "The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Flores*, 2022 WL 13804077, at *9 (citing *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-940 (DLI)(JO), 2019 WL 8137325, at *7 (E.D.N.Y. Aug. 15, 2019), *adopted by* Order Adopting R. & R., *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-940 (DLI)(JO) (E.D.N.Y. Sept. 30, 2019)). A court applying either method should consider the following *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50.

### 1. Percentage of Recovery

Courts in this Circuit typically approve fee awards representing one-third of the total recovery in collective actions. *See Flores*, 2022 WL 13804077, at *10 (collecting cases); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182 (2d Cir. 2008)).

Here, Class counsel's request of $94,000 out of a settlement fund of $280,000 represents a slightly higher award at 33.57% of total recovery.

### 2. Goldberger Factors

The *Goldberger* factors further favor approval of attorneys' fees.

### a. Time and Labor Expended by Counsel

*First*, as discussed previously, Class counsel expended significant time and labor by engaging in a "lengthy and exhaustive" settlement process beginning in about October 2019,

and negotiated over the precise wording of the agreement between December 2021 and August 2022 after settlement was reached in principle. (*See* Troy Decl. for Fees, ECF No. 135 ¶ 28.) According to Class counsel's submission, "over 1,055 hours" were expended to litigate and settle this matter over a period of eight years—or "about 132 hours per year." (Mem. for Fees, ECF No. 134 at 23; *see* Billing Records, ECF No. 135-1.) Moreover, these hours do not include the additional hours that Class counsel will expend to administer the settlement in the future. Accordingly, the first factor leans in favor of reasonableness of the fees.

### b. Magnitude and Complexities of the Litigation

*Second*, the magnitude and complexity of FLSA cases also favor approval. "FLSA claims typically involve complex mixed questions of fact and law," and issues must be resolved "in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Beckman*, 293 F.R.D. at 479 (citing *Barrentine v. Arkansas–Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981)). Among FLSA cases, "the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA "opt in" collective action pursuant to 29 U.S.C. § 216(b)." *Viafara*, 2014 WL 1777438, at *11. Therefore, the second factor also favors approval of attorneys' fees.

### c. Risks of Litigation

*Third*, Class counsel has certainly taken on the risk of recovery in this wage and hour action, where claims are highly fact-dependent and Defendants have raised several affirmative defenses and denied material allegations. Class counsel also faced significant risk with Rule 23 class and FLSA collective certification, especially in light of the Supreme Court's decision in *Wal-Mart*, after which courts have denied numerous Rule 23 motions in misclassification

cases.  *See Beckman*, 293 F.R.D. at 480.  Therefore, the litigation risks in this case weigh in favor of approving attorneys' fees.

### d.      Quality of Representation

*Fourth*, as to the quality of representation, Class counsel's firm, Troy Law, bring extensive experience litigating large-scale wage and hour class and collective actions in this district. (Troy Decl. for Fees, ECF No. 135 ¶¶ 39–76.)  Specifically, managing attorney John Troy has extensive experiencing representing "low-income immigrant workers, in wage-and-hour and employment discrimination cases in [the Eastern District of New York]," handling over 185 ongoing matters in this district.  (*Id.* ¶¶ 40, 42.)  Managing associate Aaron Schweitzer has served as lead counsel in "hundreds of wage and hour class and collective actions" since joining Troy Law in 2017.  (*Id.* ¶ 54.)  According to Class counsel, Troy Law "spearheads the nation's wage and hour employment litigation advocacy" with one of the "largest [FLSA] caseloads in the nation, and one of the largest client bases among the Asian-American and Latinx-American, among others, immigrant worker communities."  (*Id.* ¶ 41.) Class counsel's substantial experience in wage and hour class and collective actions further supports approval of attorneys' fees.

### e.      Requested Fee in Relation to Settlement

*Fifth*, the percentage of attorneys' fees, when reduced to $93,333.34, is one-third of the Settlement Fund, which courts in this circuit have routinely found to be reasonable.  *Flores*, 2022 WL 13804077, at *10.

### f.      Public Policy

*Sixth*, the factor of public policy also favors approval of attorneys' fees because "FLSA and NYLL are remedial statutes designed to protect the wages of workers," and the approval

of fees in this case will further that statutory purpose. *Viafara*, 2014 WL 1777438, at *13; *see also D'Angelo*, 2023 WL 4838156, at *12 (holding that "such an award will encourage experienced litigators . . . to take on [wage and hour] cases in the face of risk"). Moreover, "class actions are an invaluable safeguard for public rights." *Beckman*, 293 F.R.D. at 481 (*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)). Accordingly, the public policy benefits weigh in favor of awarding attorneys' fees.

Accordingly, considering all of the *Goldberger* factors, the Court finds that award of $94,000 in attorneys' fees is reasonable.

### 3.    Lodestar Cross Check

Finally, although the general trend in this Circuit is toward the percentage-of-recovery method, the lodestar remains useful as a "baseline" or a "cross check" on the reasonableness of the requested percentage. *Goldberger*, 209 F.3d at 50. The lodestar amount is the "product of a reasonable hourly rate and the reasonable number of hours required by the case." *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH), 2023 WL 6338666, at *16 (E.D.N.Y. Sept. 29, 2023), *adopted by* Order Adopting R. & R., *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV)(MMH) (E.D.N.Y. Nov. 30, 2023). "To determine a reasonable hourly rate, courts consider market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (cleaned up). "Courts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for legal support staff in FLSA cases." *Morales v. Los Cafetales Rest. Corp.*, No. 21-CV-1868 (AMD)(RER), 2023 WL 7684775, at *7 (E.D.N.Y. Oct. 12, 2023), *adopted by* 2023 WL 8021460 (E.D.N.Y. Nov. 20, 2023). "[W]here used as a mere cross-check, the hours

documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case. *Id.* Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. *Beckman*, 293 F.R.D. at 481 (collecting cases showing courts awarding lodestar multipliers between two and eight). Class counsel's lodestar amount is $113,735. (Troy Decl. for Fees, ECF No. 135 ¶ 78; *see also* Billing Records, ECF No. 135-1 at 1–15.)

The Court finds that Class counsel's lodestar is too high because of counsel's unreasonably high hourly rates. However, as explained below, a reduction in hourly rates will still put the lodestar multiplier in an acceptable range for wage and hours class actions in this district. Therefore, Class counsel's attorneys' fee of $94,000 is also reasonable using the lodestar cross check method.

### a.    Hourly Rate

Class counsel seeks hourly rates of $650 for John Troy, $400 for Aaron Schweitzer, $250 for Tiffany Troy, $200 for Preethi Kilaru, and $150 for Maggie Huang. (Troy Decl. for Fees, ECF No. 135 ¶¶ 52, 60, 71, 76, 78; Billing Records, ECF No. 135-1 at 1–15.) These rates are all considerably higher than the accepted rates for FLSA cases in this district and thus warrant reductions. In fact, for same reasons, courts in this district have "consistently discounted Troy Law's requested hourly rates for the same attorneys and support staff." *Sanchez v. 156-40 Grill LLC*, No. 15-CV-5081 (CBA)(LGD), 2024 WL 2855719, at *5 (E.D.N.Y. June 6, 2024) (collecting cases) ("As evidenced by this ample caselaw, Troy Law is no stranger to the rates typically awarded to them, and thus, the Court finds that their requests for rates rejected as recently as last year troubling.").

With regards to Mr. Troy's hourly rate, the Court finds $650 to be unreasonable despite the substantial experience he has in litigating wage-and-hour actions because the rate is well above the $300 to $450 range for partners that is accepted in this district.  *Morales*, 2023 WL 7684775, at *7.  Likewise, Mr. Schweitzer, who is a "managing associate" at Troy Law and a 2016 law graduate, requested a $400 hourly rate, which may be within the acceptable rates for partners, but not for senior associates.  *Id.*  Ms. Troy, a 2021 law school graduate, was a junior associate at the time of this litigation, yet requested a high hourly rate of $250—a rate more appropriate for senior associates.  *Id.*  Ms. Kilaru, a "managing clerk," billed at a rate of $200, even though it is unclear whether she is admitted to practice law and whether she was performing any legal work on the case.  Finally, Ms. Huang, an accountant, requests an hourly rate of $150, which is higher than what is normally awarded for support staff in FLSA cases.

As raised during the final approval hearing and in their supplemental submission, Class counsel asserts that these rates are acceptable in part because "[t]he Second Circuit has long since determined that in fee applications, 'rates used by the court should be current rather than historic hourly rates."  (Tr. 16:24–18:16; Pls.' Supp. Ltr., ECF No. 139 at 4 (citing *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006), *Lochren v. Cty. of Suffolk*, 344 F. App'x. 706, 709 (2d Cir. 2009), and *Shi v. TL & CG Inc.*, No. 19-CV-08502 (SN), 2023 WL 5827598, at *5 (S.D.N.Y. Sept. 8, 2023).)  However, these cited cases do not necessarily justify the high rates that Class counsel is requesting.  In fact, the holdings in these cases appear to undermine Class counsel's argument entirely.  Class counsel's requested rates are not "market rates," or what is "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Reiter*, 457 F.3d at 232; *see Shi*, 2023 WL 5827598, at *5 (recommending reduction in counsel's fees, recognizing that "[m]uch

has been written in this district about the inflated rates charged by John Troy and others at his firm"). Therefore, even if the Court were to award the "current rather than historic hourly rates," the requested rates would not be defensible based on the cases that Class counsel cites.

Given the inflated hourly rates of counsel, the Court will reduce each attorney and staff member's hourly rate across-the-board to the highest end of the acceptable range, for purposes of determining a more reasonable lodestar amount. In other words, Mr. Troy's hourly rate will be reduced to $450; Mr. Schweitzer's to $325 and $200, depending on the year worked; Ms. Troy's to $200 and $100, depending on the year worked; Ms. Kilaru to $100; and Ms. Huang to $100. *See Morales*, 2023 WL 7684775, at *7.

### b. Reasonable Hours Expended

Nonetheless, he Court finds that the number of hours expended in this case is reasonable. According to Class counsel's submission, "over 1,055 hours" were expended to litigate and settle this matter over a period of eight years—or "about 132 hours per year." (Mem. for Fees, ECF No. 134 at 23.) Despite this statement, Class counsel appears to only seek fees based on 312.10 hours expended from January 2018 until November 2023. (*See* Billing Records, ECF No. 135-1.) The breakdown for each attorney is provided: 45.09 hours for John Troy, 155.06 hours for Aaron Schweitzer, 35.41 hours for Tiffany Troy, 75.04 hours for Preethi Kilaru, and 1.5 hours for Maggie Huang. (Troy Decl., ECF No. 135 ¶ 78.)

A careful review of the Class counsel's contemporaneous billing records shows that the hours expended are reasonable overall, although some entries raise a few eyebrows than others. For example, Mr. Troy billed 1.10 hours on January 14, 2018 to "Create Binder, Set Up/Key in Database" and billed 5.50 hours on April 20, 2023, in part, to "[c]ompile Exhibits and ECF to the Court," which are types of tasks better suited and more economical for a paralegal or

support staff to handle. (Billing Records, ECF No. 135-1 at 1.) It is also puzzling to see that Mr. Troy, on February 5, 2018, completed research on a subject matter that does not relate to this wage and hour action, such as "Research: ABC Board on Liquor Licensese [*sic*]." (*Id.*) More alarmingly, Mr. Schweitzer billed over 40 hours between late June 2020 and early July 2020, all under the same task description "Organize Documents and Draft Class damages calculations." (*Id.* at 7–8.) Given that entries by Mr. Schweitzer during other time periods are not overtly duplicative in this way, these entries may be attributed to an inadvertent clerical error. As a whole, the records reflect the various reasonable tasks that Class counsel had to complete to litigate this case and prepare for class-wide settlement, such as conferring with opposing counsel on settlement, drafting the Agreement, communicating with clients, reviewing the final notice to Class members, and drafting status reports and applications to the Court. Therefore, the Court finds that Class counsel's number of hours expended used to calculate the lodestar amount is reasonable.

Multiplying the reduced hourly rates and the hours expended, the Court finds that the adjusted lodestar should be $83,944.25, as opposed to Class counsel's calculation of $113,735. The adjusted lodestar multiplier is, therefore, 1.12 (*i.e.*, $94,000 / $83,944.25), which is still well within the acceptable range. *Beckman*, 293 F.R.D. at 481 (collecting cases showing courts awarding lodestar multipliers between two and eight).

Accordingly, the Court respectfully recommends that Class counsel should be awarded attorneys' fee of $94,000.

### H. Costs

Class counsel requests costs and expenses in the amount of $1,719.40 to be paid from the Settlement Fund. (Mot. for Fees, ECF No. 133; Troy Decl. for Fees, ECF No. 135 ¶ 7.)

Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *See D'Angelo*, 2023 WL 4838156, at *12 (finding costs such as filing fees, service fees, mediation, investigation, and mailing and printing to be reasonable and appropriate); *see also Flores*, 2022 WL 13804077, at *10 (awarding litigation costs including filing fee, service fees, notice printing and mailing fees, and fees related to mediation).

Class counsel has submitted an invoice summary showing out-of-pocket expenses such as filing fee, process server fees, postage fees, and notice printing and mailing fees that add up to the requested amount. (Billing Records, ECF No. 135-1 at 15.) The Court finds that these expenses are reasonably incurred and necessary to represent the Class. *See In re Tenaris*, 2024 WL 1719632, at *12.

Accordingly, the Court respectfully recommends that Class counsel should be awarded $1,719.40 in costs.

## I. Administrator Fees

The Settlement Administrator in this litigation, Simpluris LLC, requests administration fee of $9,275 to be paid from the Settlement Fund. (Mot. for Fees, ECF No. 133; Butler Decl., ECF No. 129-1 ¶ 14; Butler Supp. Decl., ECF No. 137-1.) The Agreement contemplates the administration fee award "not to exceed" $16,000, so the requested amount is in accordance with the parties' agreement. (*See* Settlement Agt., ECF No. 119-1 ¶ 3.3.)

The Administrator was appointed to administer the settlement in accordance with the terms of the Agreement and were responsible for, *inter alia*, "(a) printing and mailing, in English, Chinese, and Spanish, the Court-Authorized Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, Address Update Form, Opt Out Form ("Notice Packet"); (b) receiving undeliverable Notice Packets; (c) receiving any requests for

exclusion; (d) and answering questions from Class Members." (Butler Decl., ECF No. 129-1 ¶ 3.) If the Court grants final approval of the settlement, the Administrator will continue to fulfil duties to facilitate the settlement, such as calculating the individual Class member's allocated amount, distributing the funds by mailing checks, and tax-reporting. (*Id.*)

The Court finds that the requested administration fee of $9,275 is reasonable in light of the tasks completed by the Administrator in facilitating the notice to Class members and the tasks to be completed in the distribution of funds to each Class member. *See Flores*, 2022 WL 13804077, at *11 (approving an administration fee of $25,000 to be reasonable and within the range charged by settlement administrators in similar cases); *see also D'Angelo*, 2023 WL 4838156, at *13 (approving the same amount in administrator's fees).

Accordingly, the Court recommends that the requested administration fee of $9,275 should be approved.

## IV.     <u>CONCLUSION</u>

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' unopposed motions should be **granted in part**[4] as follows: (1) the parties' proposed class and collective settlement should be approved, with the exception of the confidentiality clause of the Agreement, which should be struck; (2) Class representative service awards should be awarded in the amount of **$20,000** for named Plaintiff Zhu and **$10,000** each for opt-in Plaintiffs Astudillo Ortega and Diaz Cruz; (3) Class counsel should be awarded attorneys' fees in the amount of **$94,000** and costs in the amount of **$1,719.40**; (4) the Settlement

---

[4] Plaintiffs' proposed order at ECF No. 127-1 should be amended to reflect these recommendations.

Administrator should be awarded a fee of **$9,275.00**.  The Court further recommends that any decision on final approval of the settlement should be held in abeyance until the parties have confirmed compliance with 28 U.S.C. § 1715(d) and the 90-day period under Section 1715(d) has expired.

A copy of this Report and Recommendation is being served on the parties via ECF.  Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  Any requests for an extension of time to file objections shall be directed to Judge Vitaliano.  If a party fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision.  *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
September 30, 2024

/s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge